UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

THOMAS A. KELLEY,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,

_____/

Case No. 1:15-CV-0107

HON. ROBERT J. JONKER

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Thomas Kelley seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.

*See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 55 years of age on the date of the Administrative Law Judge's (ALJ) decision.  (PageID.43, 102.)  He completed high school, attended some college classes, and was previously employed as a corrections officer, forklift operator, and cashier/stocker.  (PageID.95.)  Plaintiff applied for benefits on June 20, 2012, alleging that he had been disabled since September 1, 2010, due to migraines, tremors, panic/anxiety, depression, PTSD, and trouble sleeping.

(PageID.102, 115, 193–205.) Plaintiff's applications were denied on October 16, 2012, after which time he requested a hearing before an ALJ. (PageID.133–51.) On August 19, 2013, Plaintiff appeared with a non-attorney representative before ALJ Kevin Detherage for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.64–100.) In a written decision dated September 19, 2013, the ALJ determined that Plaintiff was not disabled. (PageID.43–63.) On December 2, 2014, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.35–39.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC).  *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Detherage determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (PageID.48.)  At step two, the ALJ determined Plaintiff had the following severe impairments: (1) migraines; (2) tremors; (3) depression; and (4) panic disorder. (PageID.48.)  At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.49–51.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that he could never climb ladders, ropes, or scaffolds.  The claimant should have no exposure to hazards, such as unprotected heights or moving mechanical parts.  He could frequently, rather than constantly, perform[] handling and fingering with the bilateral upper extremities.  The claimant would be limited to unskilled, non-production-rate work, involving only occasional changes in the routine work setting.  He could have occasional interaction with co-workers, supervisors, and the public.

(PageID.51–52.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.58.)

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 391,716 jobs in the nation such as a hospital cleaner, janitor, and kitchen helper that an individual similar to Plaintiff could perform. (PageID.96–97.) This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from September 1, 2010, (the alleged onset date) through September 18, 2013, (the date of the decision). (PageID.59.)

## DISCUSSION

Plaintiff claims the ALJ erred in:

1. Failing to properly weigh the evidence and restrictions due to Plaintiff's migraine headaches;

2. Evaluating Plaintiff's mental impairments, and failing to properly consider the opinion of Dr. Swabash; and

3. Relying on only national numbers at Step 5.

(PageID.990.) The Court will discuss the issues below.

**1.**

At the administrative hearing, Plaintiff argued that he was impaired to an extent much greater than that found by the ALJ. Plaintiff claimed that he experienced headaches twice a week, and that the migraines caused him to be "down" four to five days a week. (PageID.74, 89.) Plaintiff testified that even when he was able to take medication to prevent his migraines from becoming

5

unbearable, he needed to lie down in a dark room to relax. When he could not take his medication in time, he went to the emergency room. (PageID.91.) Plaintiff testified that he would go to the ER at least twice a month. (PageID.93.) Plaintiff argues that he is entitled to relief because the ALJ's rationale for discounting his testimony is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 F. App'x. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).

However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

In support of his decision to discount Plaintiff's credibility, the ALJ determined that while the record supported the frequency of Plaintiff's headaches, his testimony regarding the duration and intensity of the headaches was not fully credible. (PageID.53.) The ALJ noted, for example, that treatment records demonstrate that Plaintiff did not have any neurological abnormalities when he sought medical attention for his headaches. (PageID.306, 311, 330, 336–37, 956, 960.) A July 2012 CT scan of Plaintiff's head returned normal findings. (PageID.551.) It is Plaintiff's "responsibility to show, through objective medical evidence, that [his] subjective

complaints are credible.*" Rouse v. Comm'r of Soc. Sec.*, 75 F. App'x 476, 478 (6th Cir. 2003) (per curiam) (Nelson, Gibbons, & Sutton, JJ.) (citing 20 C.F.R. § 416.912(a)).  This is true even of cases in which Plaintiff complains of migraines.  *Long v. Comm'r of Soc. Sec.,* 56 F. App'x 213, 214. Plaintiff fails to provide supporting objective evidence that he was as impaired as alleged.  Rather the record demonstrates that with relatively conservative treatment, Plaintiff experienced improvement.  Plaintiff described his headaches as "fully controlled" in April of 2013. (PageID.763.)  When taking his medication, Plaintiff is able to remit up to 75% of his headaches. (PageID.450.)  Plaintiff is able to complete a wide variety of daily activities including caring for a dog, tending to his personal care, and handling money. (PageID.237–48.)  Accordingly, substantial evidence supports the ALJ's decision to discount Plaintiff's subjective allegations.  While Plaintiff may present other evidence, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 F. App'x at 801. That is what the ALJ did here, and the Court will not disturb that decision.

Plaintiff tacks on an unrelated argument in this claim of error that the ALJ gave insufficient weight to the opinion of a State agency consultative examiner, Natalie Gray, M.D. (PageID.997.) On October 15, 2012, Dr. Gray conducted an evaluation of Plaintiff, and determined that Plaintiff had the ability to perform light work with frequent postural activities. (PageID.121–22.)  The ALJ gave Dr. Gray's opinion "some weight." (PageID.55–56.)  In doing so, the ALJ noted inconsistencies between the doctor's opinion that Plaintiff could perform only light work and the record which showed Plaintiff's volunteer work, wide variety of daily activities, and relatively mild tremor.  (PageID.56.)

The ALJ's determination in this regard is supported by substantial evidence. In an undated resume, Plaintiff states that on the weekends he volunteers at grocery stores to help the elderly or others needing assistance with their shopping. (PageID.299.) He is able to feed and walk a dog. (PageID.238.) Though he needs a reminder to shave, he is otherwise able to handle his personal care. (PageID.239.) He is able to prepare frozen meals, do the laundry, take out the trash, and perform small repairs. (PageID.239.) Plaintiff is able to drive a car, and drives himself to appointments. (PageID.241.) Plaintiff had a slight tremor when using his hands, but had no tremor upon resting his hands. (PageID.489.) Despite these tremors, Plaintiff was able to maintain an accurate finger to nose test. (PageID.499.)

The ALJ properly considered the lack of supportability between Dr. Gray's opinion and the record. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). In addition, because Dr. Gray was not a treating physician, her opinion is not entitled to any particular deference. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Accordingly, the ALJ's decision to give only some weight to Dr. Gray's opinion is supported by substantial evidence.

**2.**

Plaintiff raises two arguments in his next claim of error. First, Plaintiff claims the ALJ failed to accurately describe Plaintiff's daily activities in discounting his credibility. (PageID.998.) As has been discussed above, however, the ALJ's decision to discount Plaintiff's subjective allegations is supported by substantial evidence. Second, Plaintiff claims that the ALJ failed to properly consider the opinion of Dr. Kirk Swabash. The Court disagrees.

On August 2, 2013, Dr. Swabash filled out a questionnaire regarding Plaintiff's mental RFC. (PageID.754–59.) Among other things, Dr. Swabash opined that Plaintiff was unable

9

to meet competitive standards in his ability to remember work like procedures, remember and carry out short and simple instructions, and maintain attendance. (PageID.758.) Dr. Swabash also opined that Plaintiff would miss work more than four times a month. (PageID.759.) Plaintiff argues that the ALJ was required to give this opinion controlling weight.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). It appears undisputed that Dr. Swabash qualifies as a treating physician.

The deference accorded to such opinions is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be

"supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g.*, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

The ALJ gave Dr. Swabash's opinion only little weight. (PageID.56.) The ALJ noted that the opinion was inconsistent with the findings of another treating physician, and that at the time he rendered the opinion, Dr. Swabash had only seen Plaintiff on two occasions. (PageID.56.) Plaintiff first claims that the ALJ was required to give more weight to Dr. Swabash's opinion than the opinions of those sources who had not examined Plaintiff. (PageID.998–99.) Plaintiff is

mistaken. The ALJ was free to consider these opinions and determine what weight, if any, they should be given. See 20 C.F.R. § 404.1527(e)(2)(i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"); *see also Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."). Moreover, the ALJ did not error in considering the length of the treatment relationship in determining what weight to give Dr. Swabash's opinion. See 20 C.F.R. § 404.1527(c)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

Substantial evidence also support's the ALJ statement that Dr. Robert Barger's treatment notes reveal largely normal findings. Dr. Barger's notes, for example, show that Plaintiff had added stress and difficulty sleeping when he lost his job, which is what one would expect in such situations. (PageID.480, 483.) Despite Plaintiff's complaints of panic attacks and stress, Dr. Barger's treatment notes constantly state Plaintiff was alert, oriented, and had normal insight and judgment. (PageID.446, 461, 475.) While the record undoubtably demonstrates that Plaintiff experienced anxiety and panic attacks, the record also shows Plaintiff stated he could control his panic attacks with medication. (PageID.398.) In sum, substantial evidence supports the ALJ's conclusion that Plaintiff was not as impaired as that found by Dr. Swabash. Accordingly, Plaintiff's second claim of error is rejected.

**3.**

Plaintiff finally claims that the ALJ's step five finding is unsupported by substantial evidence for two reasons: first, the position of kitchen helper, which the ALJ found Plaintiff could perform, requires constant handling, and Plaintiff's RFC allows for only frequent handling. Second, Plaintiff claims the step 5 conclusion is without substantial evidence because the VE provided only national numbers. (PageID.1000–01.) The Commissioner concedes that the ALJ erred in relying on the position of kitchen helper, but argues that the two remaining positions and national numbers nonetheless satisfies the Commissioner's step 5 burden. (PageID.1019–21.)

Plaintiff's contention that the VE should have provided numbers of jobs in the state or regional economy lacks merit. "The Commissioner is not required to show that job opportunities exist within the local area." *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999). Work that exists in the national economy is defined as work that exists either in the region where an individual lives or in several regions of the country. *Id.* (quoting 42 U.S.C. § 423(d)(2)(A) ); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). Plaintiff is correct that "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered 'work which exists in the national economy.'" 20 CFR. §§ 404.1566, 416.966. For the following reasons, the Court finds that the Commissioner has satisfied her step five burden.

Leaving aside the position of kitchen helper, the VE testified that Plaintiff could perform a total of 201,605 jobs in the national economy in the positions of hospital cleaner and janitor. (PageID.96–97.) Nothing about these positions suggested that they would be isolated jobs in relatively few locations outside the region in which Plaintiff lives. *See Putman v. Astrue*, No. 4:07-CV-63, 2009 WL 838155, at *3 (E.D. Tenn. Mar. 30, 2009); *see also Harmon*, 168 F.3d at 292

(holding that "700,000 jobs [in the national economy], with no indication of gross concentration in a few areas, is a 'significant number of jobs in the national economy' "); *Nation v. Apfel*, 194 F.3d 1313 (table), 1999 WL 970302, at *8 (6th Cir. 1999) ("Based upon *Harmon*, it is clear that Plaintiff's claim that the vocational expert improperly failed to specify the geographical area of the state or direct Plaintiff to any specific job is without merit. It is sufficient that the vocational expert identified a significant number of jobs which exist in the national economy that Plaintiff could perform."). Plaintiff is incorrect that the Commissioner has failed to establish that a significant number of jobs exist that he could perform. (PageID.1001.) Indeed many courts, including the Sixth Circuit, have found lesser numbers to constitute a significant number of jobs. *See Lash v. Comm'r of Soc. Sec.*, No. 12-13472, 2015 WL 3505875, at *3 (E.D. Mich. June 2, 2015) (collecting cases). The Court is to apply a commonsense standard in determining what constitutes a significant number of to the facts in each case. *Hall*, 837 at 275. Under such a standard, the undersigned concludes that the over 200,000 positions identified by the VE is a significant number of jobs, and thus the Commissioner satisfied her step five burden. Accordingly, Plaintiff's claim of error fails.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.


Dated:      March 14, 2016            /s/ Robert J. Jonker
                                      ROBERT J. JONKER
                                      CHIEF UNITED STATES DISTRICT JUDGE